The next matter, number 161415, United States v. Scott Baker, Robin Baker. Thank you. Ms. Bringer, good morning. Good morning. And may it please the Court, my name is Nora Bringer and I represent the United States in this appeal. With the Court's permission, I'd like to reserve three minutes for rebuttal. You may. Thank you. Following the District Court's agreed judgment that Scott Baker owes more than $5 million in federal tax liabilities, and its determination that Robin and Scott Baker fraudulently transferred assets before and during their divorce, while knowing that Mr. Baker owed millions of dollars in federal taxes, this appeal now focuses on the District Court's distribution of two assets, the escrowed funds and the proceeds in the sale of the Bakers' primary residence, called the Hingham property, throughout these proceedings. Federal tax liens attach to both assets, and both assets should be available to put a dent in Mr. Baker's sizable tax debt. Beginning with the escrowed funds, Ms. Baker did not respond, and thus has waived any response, to the government's contention that the original transfer in 2003 that Mr. Baker made of the Planet Fitness proceeds to the Baker Trust was a fraudulent transfer. She also now readily agrees that the Baker Trust, for which she was the trustee, was a sham trust. And she agrees that Mr. Baker had a right to property to the IMA bankruptcy payments, which led to the escrowed funds, for purposes of the federal tax lien, and that the funds were legally his from 2002 forward. Jumping off from that analytical starting point, I would like to focus this morning on the next steps in the analysis. In determining Mr. Baker's rights to the escrowed funds, the District Court was bound to apply Massachusetts law, including the Commonwealth's comprehensive approach to dividing assets in a divorce, and the fundamental equitable principle that a wrongdoer should not profit from her wrongdoing. In this case, the District Court failed to adequately explain its division of the escrowed funds, but it appears that the court viewed that decision through the lens of the Baker's divorce. The District Court's inadequate explanation has a substantive effect, in that Massachusetts law is absent from the division of the escrowed funds. There's no mention of the 14 factors required under Massachusetts law, and there's no discussion of either discretionary factors that the parties discussed extensively in the District Court, namely Mr. Baker's generation and responsibility for the escrowed funds, or Ms. Baker's contributions as what the statute calls a homemaker to the home. The Supreme Judicial Court has reversed financial arrangements in Commonwealth divorces for these kinds of failures. In Bowering v. Reed, one spouse appealed, challenging the assets... So, we have a Commonwealth divorce decree. Yes. Which divides the property. Yes, Your Honor. It's a separation agreement that the District Court found to be a fraudulent transfer. But the divorce is still a valid divorce. The District Court did not invalidate the divorce. So, the Supreme Judicial Court has required courts in Massachusetts, dividing assets in a divorce, awarding alimony, and so on, to discuss every one of the 14 factors in Section 34, and in addition to discussing those factors, to explain the rationale for the ultimate division of the assets and any award of alimony. I'm confused by this. The State Court allocation has been set aside as fraudulent. That's correct, yes. And so, you've got a sum of money sitting here, and the U.S. claims that it's its money, or it's lien-attached money, and the other party, the taxpayer, claims that no, she has a right to the property by virtue of the divorce and marriage. Was there any particular reason the government just didn't argue that's the end of it? Even if she has a lien, it's second to the government's tax lien. In this case, the Bakers were divorced in 2008, and the government's tax liens arose the following year in 2009. So the government contended that Ms. Baker is not entitled to the funds due to the various activities that she engaged in regarding the fraudulent transfer of assets in this case, but the fact is that the Bakers' divorce in 2008 is still a valid divorce and occurred before the federal tax liens arose in 2009. The Supreme Judicial Court's approach to this, in requiring a rationale for the ultimate division of the assets, is a practical approach. It would be very difficult, if not impossible, for an appellate court to review the trial court's division of marital assets, that holistic, very fact-intensive process, when those factors aren't analyzed and the ultimate rationale is not provided. This is akin to the federal standard. So are you saying that she may be entitled to something if those factors are applied, but she's not entitled to what the court found she was entitled to? The government's position is that Ms. Baker is not entitled to any of the funds, given her active participation in fraudulently hiding these assets from the government. So why would we go through this equitable distribution argument? Well, it appears that the district court did look at this through the lens of the Bakers' divorce. There's no other way to understand why. So if you're saying that that was error to even look at it that way, I just don't understand why you're arguing that we should be doing it. I mean, if the government's position is she wasn't entitled to any of it, then it doesn't matter what the equitable distribution laws say, does it? Well, it matters in that the district court viewed this through the lens of divorce and then awarded Ms. Baker half of the assets. But you're saying that that's wrong, that the court shouldn't have awarded her anything. That's correct. I think there are two sort of equitable areas of Massachusetts law that could come into play here. One of them is the Massachusetts approach to divorce, and the other is this more sort of fundamental equitable principle that she shouldn't be entitled to any of these funds at all. Did you write that in your brief? Because maybe I missed something, but I read your brief as saying the court set aside the transfer so it, like a Massachusetts court, now needed to do an equitable apportionment, and it goofed because it used a narrow property state standard of 50-50, and it should have articulated application of a multi-factor test. That's what I read your brief as saying. The brief also does include the point regarding the fact that a wrongdoer should not benefit from it. So you get an alternative argument in response to Judge Thompson's question that it makes no difference how that multi-factor, the court could have skipped the multi-factor test entirely, could have skipped any reference to divorce settlement, and just said I don't think it's equitable for her to get the money because she was involved in the sham transactions. Yes, that's correct. Yes, it is. I'd be happy to point you to the place in the brief if that would be helpful. That's all right. Okay. So the division of the escrowed funds, in addition to not meeting the Massachusetts standard, also did not meet the federal standard under Rule 52A for a court sitting without a jury. The Fifth Circuit explained in Curtis v. Commissioner, which was an appeal of a tax court case, that there are two reasons for the requirement for the trial court to set up findings of fact and conclusions of law. One of them is to aid appellate review, and the other is to ensure that the trial court exercises care in making those findings and conclusions. Here, compounding the absence of the- I don't understand why you're arguing this. If you're saying that under federal law or under state law, she's not entitled to them regardless, I don't understand why you're arguing equitable distribution. Well, it appears again that the district court took that approach, and so- But why aren't you arguing that the district court erred and that the correct approach should have been she was engaged in fraudulent activity and she's not entitled to benefit from it? So the government is making both arguments, Judge Thompson, in that- I guess I just don't understand why you're making the first one. Okay. Go ahead. Well, I'd like to turn then to the other part of this argument, which is this concept that a wrongdoer should not be allowed to benefit from her wrongdoing. In this case, Ms. Baker again and again helped her husband and then ex-husband to hide assets from the government. Both of them transferred Mr. Baker's property before their divorce in 2007, knowing full well that a multi-million dollar tax assessment was looming, and that of course during their divorce engaged in a wholesale fraudulent transfer of all of the assets to Ms. Baker and all of the liabilities in the marriage to Mr. Baker. I would like to turn to the lien tracing issue, if I may. The evidence in this case was sufficient to support the government's lien tracing claim. The district court found that Mr. Baker made the majority of the mortgage payments and also found that he regularly made monthly payments of $6,200. But Baker's testimony in this case is, of course, evidence. Ms. Baker testified that Mr. Baker was the source of the mortgage payments and that she always physically paid the mortgage. Both of them confirmed the amount of the payments, $6,200 per month. Ms. Baker testified that the mortgage payments were always made, and when Mr. Baker didn't have the money, Ms. Baker made the payments herself. The United States was entitled to rely on their testimony. The government was not required to introduce documentary evidence to support their testimony, and indeed documentary evidence would have been hard to come by given that very often these transfers from Mr. Baker to Ms. Baker to pay the mortgage were done in cash. With respect to the seniority of claims to the Hingham property, Ms. Baker contends that Section 34, the divorce procedure in Massachusetts, trumps the government's federal tax lien, and that is not the case. Under McDermott, the Supreme Court case from 1993, the federal tax lien attached a superior position to every piece of property that Mr. Baker acquired after the tax liens arose. That includes all of the wages and income that he diverted to paying the mortgage on the Hingham property rather than paying his prodigious federal tax debt. But Baker's testimony was sufficient to support the district court's conclusion that Mr. Baker made the majority of the payments, and it is sufficient to support an entry of judgment for the government on its lien-tracing claim. If there are no other questions at this time, I will... Well, you actually better help me. In response to the questions Judge Thompson was asking, I looked back at the summary of argument you briefed, and I don't see that argument at all that we don't even need to pay attention to how Massachusetts would divide marital property. So, and I don't see it on the table of contents, so where in the brief should we look for it? I'm happy to find that. Just one moment, Judge Gerda. So on page 55 and 56 of the brief is where that issue is raised. We discuss the fact that Ms. Baker was an active participant in those fraudulent transfers, and that it's a sound principle that such a person should not be allowed to benefit from those fraudulent actions. But aren't you just saying that's one of the factors it should have looked at under Massachusetts law? Because the... Well, we can look at this. Thank you. Good morning, Mr. McMahon. Sean McMahon, thank you, Your Honor. Sean McMahon, representing Defendant Robin Baker. Your Honors, I would also like to attempt to analyze this case in terms of the two assets at issue, which is the amount of money, about $600,000 held in escrow, which the government is now holding. That money arose, or was eventually recovered, from the sale of taxpayer Scott Baker's company, which he started and sold while he was married to my client, Robin Baker. And those funds are not traceable at all to the Hingham property. I'd also like to point out that the government's reliance on... repeated reliance on Ms. Baker being a wrongdoer and therefore not entitled to any division of this property is misplaced. The government did bring a claim of tortuous conversion of tax lien against Ms. Baker, but dismissed that claim specifically before trial so that she would not be entitled to a jury and not have the opportunity to prove the individual claims against her and therefore was not exposed to a personal judgment against herself. When they dismissed that claim, Ms. Baker's participation in the case was essentially equivalent to one West Bank. Essentially, they were just going after assets. They dropped the claim against Ms. Baker personally. And Ms. Baker's involvement in the case was simply as a person who owned an interest in an asset that the government was claiming its tax liens attached to. One West Bank was in the case for the same thing. Everybody agreed on their entitlement and their security interest with the mortgage to the Hingham property, and they were stipulated out. When the government dismissed the personal claims against Robin Baker, it gave up the ability to get a personal judgment against her, and instead the only thing at issue was her entitlement to the two assets in question, the escrow funds and the Hingham property. So first turning to the escrow funds. The escrow funds resulted ultimately from Scott Baker's start and sale of his company during their marriage. The government's reliance on the transfers into the Scott Baker Trust for the initial investment into the Sun Boss transaction was a transfer that Mr. Baker and Ms. Baker never themselves acknowledged as being a transfer to a separate entity. And that's why in the brief we have argued that... But does that matter? We have findings that it was a sham trust. It was, and they treated it as such. In the divorce decree, they themselves set forth who would get the proceeds from the bankruptcy claim resulting from that, and just to go factually through... So these were monies that should have gone to the United States, but instead went into the sham trust. They went into the trust, but they were never hidden from the United States. They were into the sham trust, and all of the income from the sale was reported on Mr. Baker's original 2002 tax return. So to say that these assets were placed offshore and hidden to separate them from collection is not correct, and there's no finding to that effect. The sham status of the original transfer into the trust just meant that the money was available and was a marital asset, and they awarded that in their separation agreement. At the time, there was no money that came from that. The Bakers had placed the sale proceeds from the business in an offshore trust, did report all the income to the government. When they discovered and realized that the son-of-boss transaction was not allowable, they entered into the global settlement program. Scott Baker entered into the global settlement program, one of the requirements of which was to pay the tax due. It was after that point that he discovered that the offshore investment was a Ponzi scheme and all the money had been stolen, and he was unable to pay the government because he didn't have the funds. They had made a claim in the bankruptcy because it was a bankruptcy that went after the hedge fund because many people were defrauded. Eventually, there was a recovery. That's the money that eventually is now being held in escrow. It originated from the sale of the business. There's no funds in the escrow agreement that originate from any other asset. The government has also made a claim in the brief that Ms. Baker, in a tax court proceeding concerning the 2002 tax year, disclaimed entitlement to that money by saying that it wasn't her money. That case concerned 2002, which was the year that Ms. Baker was still married, so all of her statements in that case were accurate, but they related to 2002, a point in time when they were still married, and she had not gotten her property rights as a result of the divorce, which occurred in 2008. If they had not been divorced, isn't it clear that the United States would have been entitled to all of the money? Yes, it is. Is this a sham divorce? No, it's not. Well, they continue to live together. They continue to vacation together, et cetera, et cetera. The only examples of actual sham divorces that have been deemed to not be legally enforceable are situations where the couple got remarried shortly after the divorce in order to take advantage of the tax aspects of filing separately. But in this case, Judge Stearns found that this was not a sham divorce. The divorce was reviewed, is being deemed legitimate. The property division in the divorce, however, that awarded majority of property to my client was set aside. Having set aside the property division in the divorce and determined that the divorce was legitimate and a real divorce, Judge Stearns then needed to substitute a more equitable property division, which is what he did. And didn't he make a flat mistake of law in doing that by expressing a misunderstanding concerning Massachusetts' marital property law? In a footnote, he mislabeled Massachusetts as a common law, excuse me, as a community property state. However, in his extensive factual findings, very extensive factual findings, he essentially went through all of the factors in the Massachusetts divorce statute. To say that he did not consider all of the necessary factors to render an equitable decision is simply not accurate. Furthermore, the government's argument that Judge Stearns needed to set forth a decision which exactly mirrored what he would have done had he been deciding a Massachusetts divorce is also disingenuous from the simple fact that he was not deciding a Massachusetts divorce. Excuse me. Yes. Going back to the divorce, didn't the court find that the Bakers had divorced for the purpose of fraudulently transferring the assets? Off the top of my head, I'm not sure if that was a finding, but it would not surprise me. In determining that the property division in the divorce was fraudulent and should be set aside, the judge essentially said that... Mr. Scott remained in the Hingham property. It made the majority of mortgage payments. It conceded divorce and held himself out to be married. He did find that... I haven't finished. Sorry, Your Honor. There's a few more findings that are interesting. That Robin received substantially all of Mr. Scott's assets in the divorce agreement. That they hid the assets after the divorce. That there was not adequate consideration for Scott's transfer. That he was insulted after the transfer occurred. And that the transfer was made after substantial debt had been incurred. Are those all findings? Those are his findings. And those are the findings he relied upon to set aside the property division set forth in the settlement agreement. He also found several indications that the divorce had been fraudulent, including one, only Robin had been represented by counsel. Two, they continued to live together in the house that they had transferred after the divorce. Three, Scott paid the mortgage and other bills related to the house. And Robin received most of the assets while Scott received most of the debts in the divorce. It sounds to me like a fraudulent divorce. It sounds to me that the court found that it was a fraudulent divorce. The court found that the divorce was not fraudulent, but that the property separation in the divorce agreement was fraudulent and set out to do a new more equitable property division. What was in this case? Is it not enough? Yes. Ms. Baker has rights. She is a divorced woman and she has property rights in the marital property under Massachusetts law, which provides for an equitable property division. And in this case, Judge Stern simply found that the property division in the settlement agreement was not equitable. And so in enforcing the government's tax lien, standing in the shoes of Scott Baker had to determine of the marital assets, what should Scott Baker be properly entitled to rather than Robin Baker? What portion of the marital assets is she properly entitled to? Because she does not owe the government any taxes. The government pursued her in a tax court case and made allegations against her, but as we stand here today, Robin Baker does not owe the government any taxes. She was divorced. The divorce decree from Massachusetts... So you're saying that if she had stayed married, then the government gets the money? Yes. But because there was a legal divorce with a fraudulent property settlement agreement, that she gets to keep part of it? She gets to keep the portion that she's entitled to. After divorce, the property is separated. The portion that is Scott Baker's, the amount of marital property that Scott Baker is entitled to through an equitable property division in the divorce is subject to the government's tax lien. And so you're saying the court didn't clearly err when it found that the divorce was legitimate even though the property settlement agreement was not? Yes, and as we put in the brief, there are other cases that have found that as well where the divorce is legitimate, but the property division within the divorce that was agreed to was not legitimate. And that's what Judge Stearns essentially did. He did not find that they were not divorced. It's hard to figure out what divorced means in this case. Given what Judge Stearns just recited. The divorce settlement agreement did contemplate that they would live together afterwards. This was not something that... And continue to hold themselves out as husband and wife to the public. Well, there's evidence in the record that on job applications she did indicate that she was divorced. The testimony in file was that they had not told their children or some other friends. But officially for job applications, tax returns, et cetera, they did abide by the divorce agreement. And Judge Stearns found that they are divorced. They are not forced to continue to be married. And that as a divorced woman, she is entitled to her equitable portion of the marital proceeds. And the portion that's deemed to be Scott Baker's, the tax claim attaches to it. The portion that is rightfully Robin Baker's does not attach to it. What I would like to address in my remaining time is our argument that as far as the other asset in the case, not the escrowed funds but the Hingham property of the house that was sold, that that argument is now moot because the government filed a discharge of the tax lien against the house. The sale proceeds that resulted from it, half of them have already been paid over to the government. But the other half were not held in escrow. They were distributed to my client, Robin Baker. As you can imagine, with the escrow funds being held and not being distributed to her, she has needed funds. She has spent those monies. Those monies are not held in escrow. So there are at this point for their lien tracing... Why is it moot? I mean, if that is money that didn't belong to her, the government has the time to go against her, aren't they not? Except for the fact that they dismissed their claim of tortuous conversion against her personally. Again, once they did that, she's only in the action as a person claiming an interest in the assets that are subject to the tax lien. The escrowed funds are not traceable whatsoever to the Hingham house. The Hingham house has now been discharged or sold to someone else living in it. The government received half of the sales proceeds. There's no escrow agreement for the other half. They were distributed to my client without any understanding that she would hold them back. Those monies have been spent. The government cannot identify any funds that currently exist that their lien traces to as a result of the Hingham property. Therefore, the argument is moot. There's no asset that can be identified. To say that... I'm not shaking my head saying that I agree with you. I'm just shaking my head. It is somewhat unusual. We were kind of surprised when they didn't ask for an escrow agreement because we have a thorough escrow agreement regarding the funds that resulted from the business sale funds. But to say in this case that there was a mistake made because Robin Baker was not... First of all, the case is moot because, as I said, the assets aren't in existence. You can't substitute the money that's now being held in escrow for the Hingham sale proceeds because that's not what lien tracing is. You have to trace to a specific asset. If you're going to say she spent that money and she received money that the government's tax lien attached to and spent it without an escrow agreement, therefore we're going to make it up by taking the money out of the funds held in escrow, that's a claim of personal liability. That's not lien tracing to a specific asset. And that's the claim that the government specifically dismissed before trial so that they wouldn't have a jury and my client wouldn't have an opportunity to explain herself to the 12 people. Regardless of whether the court considers the lien issue regarding the Hingham property moot, getting to Judge Stern's actual decision, we also feel that Judge Stern was correct. The government did not meet its evidentiary burden in proving lien tracing. Lien tracing must be specific. The only evidence that they're relying on is the testimony from Robin and Scott Baker, which for every other point has been held to be non-reliable. Interesting that they're relying on it here. They're picking and choosing what they want, but essentially the amounts that were paid from Scott to Robin were never well documented. There's no further evidence that Robin, when she took that money, actually used it to pay the mortgage. There's simply no accounting and the government's used the majority of payments made by a statement by Scott Baker. It's rather disingenuous considering how none of his other testimony was relied on for financial purposes. We instruct juries every day that they can pick and choose what to believe and what not to believe. In this instance, I don't think that it is adequately reliable. That's all. I'm finished. Thank you. I'd like to spend just a moment on the mootness argument regarding the lien tracing. The government's lien tracing claim is not moot. Government protected that issue by filing this appeal, and of course the district court's decision regarding the division of the proceeds in the Hingham property is reversed. Ms. Baker is bound to return those monies that she erroneously received. In addition, the tax liens attached to the property and whatever substituted for it, here the tax liens attached to the proceeds of the Hingham property, not to the escrowed funds, that's not the claim here, but rather that the tax liens on the Hingham property attached to the proceeds from the sale of that property. How do you deal with the district court's finding that your evidence was all in the form of admissions and the testimony of the taxpayers on the tax lien on the property? The district court said he didn't believe them. He didn't find them credible. Which is a little odd because they were making admissions against their own interest, but that's what he said. Doesn't that then leave you with no evidence? It doesn't because the district court found that Mr. Baker made the majority of the payments. But it didn't say in which time period he made the majority of the payments. That's true, Your Honor. So you don't know whether it's a point in time period where he made two or when it is, and we've got this is a fact finding to where we can only reverse it if it's essentially obvious to the court. In this case, the way that the math works out, I think, still makes the tax lien traceable to the entirety of the proceeds. And we have some information in our brief. I don't think I'd be happy to go through the math with you if I need to. But the majority of the payments just during the time period that's at issue here between the federal tax lien and the time of trial amounted to about $207,000, which well encompasses the proceeds at issue here. So we would look to those calculations to show that it's a practical matter because the property has now been sold and we know the amount of the proceeds, that the majority of the payments would have encompassed those proceeds. I'd also like to just make a final note on the equities here, which is that when the district court set aside the separation agreement as a fraudulent transfer here, it made some specific adjustments to who received certain assets. Of course, the Hingham property is one such asset. There are some properties in New Hampshire that are in the process of being sold, another asset that the court identified. But I think it's important to note that the division of the liabilities was also inequitable. Mr. Baker took on half a million dollars of business debts, and that hasn't changed. And the assignment of their personal property was also imbalanced in the separation agreement, and that hasn't been altered either. Does the court have any further questions? Thank you. Thank you.